UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WARREN TAYLOR, | CASE NO. C12-2256JLR |
| Petitioner, | ORDER DENYING 28 U.S.C. § 2255 MOTION |
| v. | |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

Before the court is Petitioner Warren Taylor's 28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence (Mot. (Dkt. # 1)). After a seven day trial in 2009, a jury convicted Mr. Taylor of Conspiracy to Distribute MDMA/Ecstasy. Mr. Taylor raised several issues in his direct appeal to the Ninth Circuit, and the Panel affirmed his conviction. The United States Supreme Court subsequently denied his petition for writ of certiorari. Mr. Taylor now seeks relief from his conviction on the grounds that both his trial and appellate counsel were unconstitutionally ineffective. His arguments are without

1   merit.  Accordingly, this court DENIES Mr. Taylor's 28 U.S.C. § 2255 motion.  (Dkt.

2   # 1).

3                              **I.      BACKGROUND**

4           A federal grand jury indicted Mr. Taylor for one count of Conspiracy to Distribute

5   MDMA/Ecstasy in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846; and five

6   separate counts of Possession of MDMA/Ecstasy with Intent to Distribute in violation of

7   21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and 18 U.S.C. § 2.  (Resp. (Dkt. # 10) at 1-2.)

8   The charges exposed Mr. Taylor to a maximum term of imprisonment of 20 years.  *See*

9   21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).  Pursuant to 21 U.S.C. §§ 851 and 841, the

10  government filed a Notice of Penalty Enhancement Information based on Mr. Taylor's

11  two prior felony drug convictions.  (Resp. (Dkt. # 10) at 6.)  This increased the maximum

12  term of imprisonment to 30 years.  *See* 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

13          Mr. Taylor retained Mark Mestel as his trial attorney.  (Mot. (Dkt. # 1) at 6.)  The

14  government sent several proposed plea agreements to Mr. Mestel in the period preceding

15  the trial.  (*See* Exs. A, B & C to Mestel Affidavit (Dkt. # 10 Ex. 1.))  According to Mr.

16  Mestel, "[e]very time [he] received a plea proposal from the government, [he] advised

17  Mr. Taylor of the proposal and discussed the terms and conditions of each plea proposal

18  with him."  (Mestel Affidavit at ¶ 6.)  Mr. Mestel further states that Mr. Taylor

19  consistently expressed that he was not interested in a plea agreement and wanted to

20  exercise his right to trial.  (*Id.* at ¶ 4, 9-11, 15).  After Mr. Taylor rejected several plea

21  agreements offered by the government (*see* Exs. A, B & C to Mestel Affidavit), Mr.

22

1    Mestel notified the government of Mr. Taylor's rejections (*see* Ex. D to Mestel

2    Affidavit.)

3        On September 17, 2009, the government sent a final plea proposal to Mr. Mestel

4    under the terms of which "Mr. Taylor would plead guilty to conspiracy to distribute

5    MDMA, and the parties would agree to recommend a sentence within the range of 48

6    months to 151 months." (Ex. D to Mestel Affidavit.)  According to Mr. Mestel, he was

7    traveling in Europe at this time and had his assistant call Mr. Taylor to read the email to

8    him regarding the government's plea proposal.  (*See* Mestel Affidavit at ¶ 13; *see also*

9    Ex. E to Mestel Affidavit.)  In his instructions to his assistant, Mr. Mestel directed her to

10   "call Warren Taylor and read to him the email that I received from the US Attorney's

11   Office.  Tell him that I know he is not interested in pleading to the conspiracy, but that it

12   is my legal obligation to pass on all offers to him.  Ask him if he wants me to make a

13   counteroffer.  The only counteroffer that I could think of would be using a telephone to

14   facilitate a drug transaction.  Also tell him that the best that I think I can do on a plea

15   offer would be 4 years and that is a long shot." (Ex. E to Mestel Affidavit).  Less than an

16   hour later, Mr. Mestel's assistant replied to his email and told him, "I read [Mr. Taylor]

17   the email from the U.S. Attorney Attorney [sic] and told him what you said about a

18   counteroffer.  He said you were going to trial.  I spoke with him at 8:58 a.m. this

19   morning." (*Id.*)  Mr. Mestel began trial preparation, during which he met and spoke with

20   Mr. Taylor several times (*See* Mestel Affidavit at ¶ 15.)  According to Mr. Mestel, Mr.

21   Taylor did not express any interest in pleading guilty to a drug trafficking crime and

22   repeatedly expressed his desire to go to trial.  (*Id.*)

1    After a seven day trial, the jury returned a guilty verdict on the first count and a

2    not guilty verdict on the remaining five counts.  (Resp. (Dkt. # 10) at 10.)  Before

3    sentencing, a Probation Officer prepared a Presentence Report and calculated the

4    advisory sentencing range for Mr. Taylor under the United States Sentencing Guidelines.

5    (*Id.*)  The Probation Officer noted that the evidence at trial established that Mr. Taylor

6    had purchased at least 700,000 ecstasy pills during the course of the conspiracy.  (*Id.*)

7    Applying Comment n.11 to Section 2D1.1 of the Sentencing Guidelines—which provides

8    that when the number of pills is known, but not the exact weight, the number of pills will

9    be multiplied by the typical weight per dose—the Probation Officer found that this

10   number of pills equated to 175,000 grams of MDMA based on a typical pill dose of 250

11   milligrams.  (*Id.*)  Using the drug equivalency table found in Section 2D1.1, the Probation

12   Officer determined that this was the equivalent of 87,500 kilograms of marijuana.  (*Id.* at

13   11.)  This resulted in a base offense level of 38.  (*Id.*)  Mr. Taylor's two prior felony drug

14   convictions made him a Career Offender for purposes of Section 4B1.1(a) of the

15   Sentencing Guidelines, which resulted in a criminal history category of VI.  (*Id.*)  Based

16   on the offense level of 38 and the criminal history category of VI, Mr. Taylor's guideline

17   range of imprisonment was 360 months to life; due to the 30 year statutory maximum

18   term of imprisonment, however, the guideline range was 360 months.  (*Id.*)  Ultimately,

19   the Probation Officer recommended a 192 month term of imprisonment.  (*Id.*)

20   Mr. Mestel filed a Sentencing Memorandum in which he asked the court to impose

21   a term of imprisonment of 60 months.  (*Id.*)  While Mr. Mestel did not advocate for a

22   particular base level offense or criminal history category to be applied, he did object to

1   the amount of drugs for which the Presentence Report held Mr. Taylor accountable.  (*Id.*)

2   Mr. Mestel argued that 79,999 pills—which was the amount attributed to co-conspirators

3   Kyger and Banks—was more appropriate.  (*Id.*)  He also objected to the use of the drug

4   equivalency calculations.  (*Id.*)  Mr. Mestel reiterated his objections at the sentencing

5   hearing and asked the court to impose a sentence of 60 months.  (Sentencing Transcript

6   (Dkt. # 10) Ex. 3 at 3.)  The government agreed with the recommendation of the

7   Probation Officer and recommended a sentence of 192 months imprisonment based on an

8   offense level of 34, which was the same offense level applied to a majority of his co-

9   conspirators, and a criminal history category of III because the criminal history category

10  of IV overrepresented his criminal history.  (Resp. (Dkt. # 10) at 12.)

11        The court calculated a total offense level of 38 and a criminal history category of

12  VI.  (Sentencing Transcript (Dkt. # 10) Ex. 3 at 14.)  The court, however, chose to depart

13  and "use the methodology proposed by Probation, which is to calculate this, and for the

14  reasons of where I begin my sentence, application of the 3553(a) factors, as a total

15  offense level of 34 and a criminal history category of 3."  (*Id.*)  Addressing the 18 U.S.C.

16  § 3553(a) factors, the court stated that, based on the evidence at trial, it found "that Mr.

17  Taylor was involved in approximately 700,000 pills, which really doesn't matter because

18  it comes out to something like 11,000 some odd kilos of marijuana equivalency, which

19  dramatically trips towards the heavier sentence burden."  (*Id.* at 17.)  The court

20  concluded:

21        I believe that a departure from the guidelines is required in this instance.
          And for that reason, as I have already indicated, I begin my point of
22        departure with a total offense level of 34, and a criminal history category of

3, because I believe the two prior convictions, combined with the career offender enhancement, overstate Mr. Taylor's criminal history.  Having therefore thought about this sentence a great deal, and attempting to balance those factors, it is the judgment of the Court [that] . . . as to Count 1, the defendant shall be committed to the custody of the United States Bureau of Prisons for a term of 192 months.

(*Id.* at 19.)

In his direct appeal to the Ninth Circuit, Mr. Taylor retained Daron Morris as his attorney.  (Mot. at 5.)  Mr. Morris did not argue that the court had committed a "significant procedural error" when it calculated Mr. Taylor's base offense level.  (*Id.*)

## II.   ANALYSIS

In order to state a cognizable 28 U.S.C. § 2255 claim, a petitioner must assert that he is in custody in violation of the Constitution or laws of the United States, that the district court lacked jurisdiction, that the sentence exceeded the maximum allowed by law, or that the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255(a).  Mr. Taylor argues that he is in custody in violation of the United States Constitution due to the allegedly ineffective assistance of both his trial and appellate counsel.

Mr. Taylor provides no credible evidence to support his claims and his baseless factual assertions are refuted by the affidavits of Mr. Mestel and his assistant along with their contemporaneous emails and notes.  No evidentiary hearing is required.  *Marrow v. United States*, 772 F.2d 525, 526 (9th Cir. 1985) (no hearing required where allegations "either fail to state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal") (internal quotation and citation omitted).

1    **A.  Ineffective Assistance of Trial Counsel**

2    The Sixth Amendment to the United States Constitution guarantees a criminal

3    defendant the right to effective assistance of counsel.  *Strickland v. Washington*, 466 U.S.

4    668, 687 (1984).  Ineffective assistance only arises if the defendant can prove that (1)

5    counsel's performance fell below an objective standard of reasonableness and (2) a

6    reasonable probability exists that, but for counsel's error, the result of the proceedings

7    would have been different.  *Id.* at 687-94.

8    Mr. Taylor raises several arguments in his claim that Mr. Mestel provided

9    ineffective assistance.  As discussed in detail below, each argument fails.

10   Mr. Taylor first argues that Mr. Mestel "failed to 'discuss' and 'explain' the

11   'terms' and 'conditions' of the 'Last Plea Agreement'" with him and thus provided

12   ineffective assistance pursuant to the Supreme Court's precedent in *Lafler v. Cooper*, 132

13   S. Ct. 1376 (2012) and *Missouri v. Frye*, 132 S. Ct. 1399 (2012).  (Mot. at 11.)  To

14   support this contention, Mr. Taylor only offers his own, unsubstantiated allegation that

15   Mr. Mestel failed to present the September 17, 2009, offer to him.  (*Id.* at 6-9.)  The

16   affidavits from his two friends relate to an August 2009 meeting—before the government

17   offered the last plea agreement—between Mr. Taylor and Mr. Mestel, and each states that

18   Mr. Mestel discussed a plea bargain with Mr. Taylor.  (Mot. at Appx. D and E).  Mr.

19   Taylor's bare allegation that Mr. Mestel never discussed the final plea offer with him is

20   refuted by the affidavits of both Mr. Mestel and his assistant and their contemporaneous

21   emails and notes.  (Resp. (Dkt. # 10).)  In *Frye*, the Supreme Court held "that, as a

22   general rule, defense counsel has the duty to communicate formal offers from the

1    prosecution to accept a plea on terms and conditions that may be favorable to the

2    accused." 132 S. Ct. at 1408.  Mr. Taylor fails to show that Mr. Mestel did not heed this

3    requirement.  Moreover, *Frye*, in accordance with *Strickland*, requires Mr. Taylor to

4    show prejudice by "demonstrat[ing] a reasonable probability [he] would have accepted

5    the earlier plea offer had [he] been afforded effective assistance of counsel." *Frye*, 132 S.

6    Ct. at 1409.  Once again, Mr. Taylor only offers his own, unsupported statement to show

7    that he would have accepted the plea offer had it been explained to him.  (Mot. at 7-9.)

8    His claim is undermined by his prior rejections of the government's plea offers and his

9    general insistence that the case proceed to trial.  (*See, e.g.*, Resp. (Ex. 2).)

10          Mr. Taylor next argues that Mr. Mestel "provided erroneous legal advice" when he

11    allegedly failed to advise him that the Section 851 sentencing enhancement raised his

12    maximum possible prison term from 20 years to 30 years.  (Mot. at 10-11.)  While Mr.

13    Mestel states in his affidavit that it is likely he would have explained this to Mr. Taylor,

14    he concedes that he cannot actually recall having discussed this with him.  (Mestel

15    Affidavit at ¶ 8.)  Assuming Mr. Mestel did fail to tell Mr. Taylor this information, Mr.

16    Taylor still has not shown a reasonable probability that he would have accepted any of

17    the government's plea offers if he had known about the effect of the sentencing

18    enhancement.  *See Strickland*, 466 U.S. at 687-94; *see also Frye*, 132 S. Ct. at 1409.  Mr.

19    Taylor consistently told Mr. Mestel that he was not interested in a plea agreement and

20    wished to proceed to trial because he was not involved in the conspiracy.  (*See, e.g.*,

21    Resp. (Ex. 1, Attachments A, C, and D).)  Mr. Taylor has failed to provide any reason for

22

1    the court to believe that an additional 10 years added to his maximum potential sentence

2    would have changed his stance.

3         Mr. Taylor also contends that Mr. Mestel provided "erroneous legal advice" when

4    he allegedly told Mr. Taylor "that the Government's attorney needed to show . . . more

5    'evidence' in order for [Mr. Taylor] to even consider pleading guilty." (Mot. at 9.)  Mr.

6    Mestel refutes this, (*see* Mestel Affidavit (Ex. 1) at ¶ 4), and Mr. Taylor only offers his

7    own, unsupported allegation to bolster his contention, (*see* Mot. at 9.)  The evidence

8    supports Mr. Mestel's version of events.  Mr. Mestel's emails and assistant's notes

9    demonstrate that Mr. Taylor consistently told Mr. Mestel that he was not involved in the

10   conspiracy, was not interested in a plea agreement, and wanted to proceed to trial.  (*See,*

11   *e.g.*, Resp. (Ex. 1, Attachments A ("I know in the past you have advised me that you do

12   not wish to take a plea  . . ."), C ("In the past you told me that you were not interested in

13   pleading guilty . . ."), and D ("I have asked my client whether he has any interest in

14   pleading guilty.  His answer is that he was not involved in the conspiracy and he will not

15   plead guilty to a drug offense.")).)  Mr. Taylor has failed to show that Mr. Mestel's

16   counsel fell below an objective standard of reasonableness.  *See Strickland*, 466 U.S. at

17   687-94.

18        Mr. Taylor claims that Mr. Mestel provided ineffective assistance at sentencing

19   when he allegedly "failed to correct the district court's erroneous calculation of [his] base

20   level offense as being a 38." (Mot. at 11).  This entire argument is premised on a

21   misstatement by the court during sentencing that was immaterial to the result of the

22   hearing.  The court mistakenly stated "that Mr. Taylor was involved in approximately

ORDER- 9

1   700,000 pills, which really doesn't matter because it comes out to something like 11,000

2   some odd kilos of marijuana equivalency, which dramatically trips towards the heavier

3   sentence burden." (Sentencing Transcript at 17). Mr. Taylor argues that 11,000

4   kilograms of marijuana produces a base offense level of 36, not 38. (Mot. at 12). As set

5   forth in the preceding calculations, the marijuana equivalency for the amount of pills

6   involved in the conspiracy was 87,500 kilograms, not 11,000 kilograms. Mr. Mestel's

7   reluctance to pounce on a simple misstatement by the court does not mean that his

8   counsel fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-

9   94. In any case, Mr. Taylor certainly cannot show that he was prejudiced by any alleged

10  error because Mr. Mestel argued for a base offense level of 32, *(see* Sentencing

11  Transcript at 3), and the court began its "point of departure with a total offense level of

12  34," (*id.* at 19). Arguing for a base level of 36 based on the court's slip of the tongue

13  would have been futile and nonsensical.

14      **B. Ineffective Assistance of Appellate Counsel**

15      The right to the effective assistance of counsel includes the right to the effective

16  assistance of appellate counsel. *Evitts v. Lucey*, 469 U.S. 387, 397 (1985). However, on

17  appeal, "appellate counsel has no constitutional obligation to raise every nonfrivolous

18  issue requested by the defendant." *Miller v. Keeney*, 882 F.2d 1428, 1434, n.10 (9th Cir.

19  1989) (citing *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983)). The petitioner must still

20  meet both *Strickland* requirements to show an actionable constitutional violation. 466

21  U.S. at 687-94.

22

ORDER- 10

1    Mr. Taylor's entire ineffective assistance argument with regard to his appellate

2 counsel, Mr. Morris, is that Mr. Morris should "have discovered that the district court

3 'incorrectly calculated' [his] sentencing guideline range." (Mot. at 15). As established

4 above, the court did not incorrectly calculate Mr. Taylor's sentencing guideline range.

5 Mr. Morris had no obligation to raise this frivolous issue on appeal. *See Miller*, 882 F.2d

6 at 1434.

7                              **III.    CONCLUSION**

8    Having rejected all of Mr. Taylor's claims, arguments, and theories, the court

9 DENIES his 28 U.S.C. § 2255 motion (Dkt. # 1).

10    Dated this 24th day of July, 2013.

11

12

13    _____

14    JAMES L. ROBART
      United States District Judge

15

16

17

18

19

20

21

22

ORDER- 11